EILEEN M. HALE *v.* FRED BENVENUTI, INC.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1242

---

Argued May 18, 1982—decided January 14, 1983

*Edmund W. O'Brien* and *Robert L. Trowbridge,* for the appellant (defendant).

*Frank N. Eppinger* and *Peter F. Stuart,* for the appellee (plaintiff).

COVELLO, J. The plaintiff, a subcontractor, instituted this action to recover monies representing electrical services and materials furnished to the defendant, a general contractor, in connection with the repair of damaged electrical equipment in a sewage pumping station. The defendant admitted that it had refused to pay the charges, claiming that it had neither ordered nor accepted the materials and labor.

Examination of the documentary evidence discloses that the defendant as a general contractor signed an agreement with the sewer authority of the city of New London for the modification and improvement of five sewage pumping stations. Article XI of that contract provided: "All damages of whatever nature resulting from the work or resulting to the work during its progress, from whatever cause, shall be borne and sustained by the Contractor."

On April 25, 1975, the plaintiff as a subcontractor signed an agreement with the defendant whereby she agreed to perform all the electrical work called for in the earlier contract between the defendant and the sewer authority.

On October 21, 1976, there was significant water damage to the electrical components in pumping sta-

tion No. 2 on Pequot Avenue. The plaintiff had already completed her contract work in this facility. There was some question as to whether the city of New London acting through its sewer authority might be liable for the cost of repairs because of an interruption in electrical service which shut down the pumps. On November 19, 1976, the defendant's vice president sent the plaintiff a letter enclosing a copy of an engineering report describing the damage. The letter instructed the plaintiff to take corrective measures immediately and further stated that responsibility would be established at a later date.[1] In response to the letter, the plaintiff thereafter repaired some components and replaced others, supplying materials and labor which the court found had a fair value of $7876.76.

The trial court concluded that the letter of November 19, 1976, constituted a specific authorization to perform extra work in repairing the electrical damage in the pumping station; that the plaintiff had expeditiously performed the required work; and that its fair value was $7876.76. The court thereafter rendered judgment for the plaintiff to recover $7876.76 plus interest.

The defendant argues on appeal that the subcontract required the plaintiff to assume all the obligations of the general contractor contained in the contract with the sewer authority concerning the electrical components, and that this included the language of article XI of the principal contract which placed the burden for all damages to the work during construction on the contractor. We do not agree.

The general contract between the defendant and the sewer authority contains two basic sections: the general

---

[1] This letter provides in relevant part: "As directed, you are to take corrective measures immediately so as not to delay the project further. Documentation of costs for all items will be required.

"This letter is not to be interpreted as to who is responsible but is intended for the sole purpose of completing the project on schedule. Determination of responsibility will be established at a later date."

provisions and the specifications. Examination of the subcontract discloses that the subcontractor only agreed to furnish the labor and materials necessary to complete certain parts of the work called for in the specifications portion of the contract.[2] Further, the subcontractor agreed only to be bound by the specifications, addenda and special provisions prepared by the architect and engineers.[3] The subcontract contains no assumption of the obligations of the general provisions of the contract as claimed by the defendant. There is, therefore, simply no factual basis to support the assertion that the plaintiff agreed to Article XI of the general contract concerning damage to the work in progress.

The defendant further argues that there was neither allegation nor proof that the defendant was negligent and that recovery under a theory of negligence is barred by the statute of limitations. While the court does make reference to the matter of fault for the water damage in issue, examination of the totality of the court's remarks makes it clear that liability is based on a finding of an implied contract to pay for the work

---

[2] The subcontract provides in relevant part: "Article 1 — The said Sub-contractor hereby agrees to furnish and pay for all the material, labor and incidental costs and equipment necessary to fully complete the following part and parts of the work included in said contract between the Contractor and said Owner in all respects, as the said Contractor is required by said plans, specifications, addendas and any special provisions to do; namely: Section 10 — Complete . . . Section 5 — Demolition work which is related to electrical . . . Section 1 — 'Order of Work' as related to electrical . . . ." (All references to Sections are references to the specifications portion of the general contract).

[3] The subcontract further provides in relevant part: "Art. 2 — The Subcontractor hereby certifies and agrees that he has examined all the plans and read and examined all the addendas, special provisions and specifications prepared by said architect or engineers for the entire work, of which the work covered by this contract is a part, and that he and his Subcontractors, will be and are bound by any and all parts of said documents insofar as they relate in any part or in any way to the work undertaken herein . . . ."

upon later determination of responsibility.[4] Since there was no request for a further articulation of the basis of the trial court's decision; Practice Book § 3082; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980); the opinion as expressed by the court must stand.

Finally, the defendant argues that there was no evidence which serves as the basis for imposing liability on the defendant based on contract. The trial court found that the defendant's letter of November 19, 1976,[5] constituted specific authority to perform the work in question.[6] Inasmuch as the plaintiff had already completed the work called for in the written subcontract, and inasmuch as the letter contained no specific disclaimer of payment, and inasmuch as the plaintiff had already performed electrical services for the defendant, it is clearly reasonable to infer that the instructions to repair the damage contained the defendant's implied promise to pay the fair and reasonable value of the work performed.

"A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. . . . Contracts may be express or implied. Those terms however do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties,

---

[4] The decision here was oral. The court stated: "[T]he obligation is under contract. The plaintiff was clearly advised and authorized to do the work. The contract is clear . . . . [H]e was told to do the work as quickly as possible . . . . It's clear in his letter . . . . There's an authorization to do work under a letter agreement."

The court further stated: "The court finds that the defendant by letter introduced into evidence as exhibit C specifically authorized the plaintiff to undertake immediately to repair the damage or at least that portion of the damage which was electrical, to repair the equipment, replace the equipment if necessary, and to do the necessary labor to accomplish that result."

[5] See footnote 1, supra.

[6] See footnote 4, supra.

spoken or written, the contract is said to be an express one. *But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one.*" (Emphasis added.) *Skelly* v. *Bristol Savings Bank,* 63 Conn. 83, 87, 26 A. 474 (1893).

There is no error.

In this opinion DALY and BIELUCH, Js., concurred.