[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action having been heard in trial to the court, the evidence is summarized as follows:
The defendant James A. Clarke, Jr. purchased his residence on Smith Ridge Road, New Canaan, in May 1987. At the time of the purchase he assumed that a lot adjoining his property could not be developed because it was mostly wetland.
In the Spring of 1988, the defendant became concerned that the portion of the adjacent lot nearest to his home was going to be improved by re-subdivision and construction.
After a visit to the New Canaan planning and zoning office, the defendant called several local attorneys in an effort to determine his possible options in opposing the development. For one reason or another, these attorneys claimed a conflict of interest which prevented them from assisting Mr. Clarke. Finally, an attorney in Massachusetts recommended that he contact attorney Austin Wolf of the plaintiff firm as an expert in such matters.
The defendant phoned attorney Wolf on or about May 2, 1988. The defendant and attorney Wolf had no previous relationship CT Page 1281 with one another and apparently never did meet one another in person until the matter had gone into litigation.
The specifics of that phone conversation are in dispute. However, as a result of the conversation, the plaintiff firm undertook research into the status and nature of any zoning and inland wetlands approval for re-subdivision and development of the lot in question and into what, if any, recourse the defendant had to prevent approval and development or to appeal from any approvals.
The research was performed primarily by attorney Christopher Smith with the assistance of a paralegal, "HJB." Attorney Austin Wolf was the supervising partner.
The plaintiff firm prepared a written memorandum (Plaintiff's Exhibit A), which was forwarded to the defendant on June 3, 1988 under a cover letter of opinion from attorney Wolf (Plaintiff's Exhibit B).
An itemized bill dated June 10, 1988 was sent to the defendant (Plaintiff's Exhibit C). Follow-up and corrected statements were sent to the defendant in July and September 1988 (Plaintiff's Exhibits D and E). The final bill was for $1653.50.
After receiving the September statement, the defendant called the plaintiff firm to deny any obligations for the billings. This was the first time the defendant had acknowledged the memorandum or responded to the billings. This phone contact was with an employee in the bookkeeping department. After being unable to reach the defendant by phone, attorney Wolf wrote a letter to the defendant dated September 23, 1988 insisting on payment for the work done. (Plaintiff's Exhibit F).
Attorney Wolf testified that in the phone conversation of May 2nd, after the defendant had identified himself, he discussed his property in New Canaan and his concern over the proposed re-subdivision and development of the adjacent lot. Attorney Wolf stated that the defendant requested an investigation into any zoning or wetlands approval, a determination of the status of any court proceedings, and advice as to any rights or options he might have.
Attorney Wolf further claimed that he told the defendant the hourly rate which the plaintiff firm charged for such work was in a range from $100.00 to $200.00. There was no discussion about any estimate of the total fee, since, not knowing the scope of the work involved, he could not give the defendant an exact figure. He assured the defendant that the fee would not CT Page 1282 be "earthshaking." He told Mr. Clarke that the firm would look into what he had requested and would report back to him on the status of the property and his rights of recourse in that regard. The defendant answered, "All right."
Attorney Wolf related that the discussion consumed ten to fifteen minutes. Thereafter, he called in attorney Smith, delineated the problem to him, and asked him to investigate the issues.
Attorney Wolf's recollection of the conversation with the defendant was based on memory and a review of the memorandum which was issued and the itemized billings. He had or retained no contemporaneous notes or memoranda of the phone call.
The defendant James Clarke, recalled that when he spoke with attorney Wolf, he gave him information about his concerns and that attorney Wolf said he would get back to him. Mr. Clarke testified that there never was any discussion about fees or costs and there was never any discussion about hourly rates. He stated that if he had been informed of the rates charged by the firm, he would have at once concluded that he could not have afforded its services. He had wanted a quick, inexpensive opinion. He had expected a return call from attorney Wolf, giving an estimate as to the time which would be involved, the costs and other fees.
Mr. Clarke testified that, after a week or so without having heard from attorney Wolf, he contacted attorney Robert DiScipio, who had represented him on the purchase of his home. He asked attorney DiScipio to look into the issue and give him an oral opinion as to the status of the adjacent property and his recourse, if any. He stated that attorney DiScipio did render an oral opinion indicating he had no recourse. Attorney DiScipio billed him $300.00, but adjusted the bill to $250.00. He was not billed by attorney DiScipio until several months later. He has paid that bill.
Mr. Clarke believed he received the plaintiff's memorandum two or three weeks after receiving attorney DiScipio's report. He stated that the memorandum was of no use to him and that he never relied on the memorandum to determine his recourse. He later received the bills. He stated he did not call the plaintiff firm sooner about the memorandum or the bills because he had not hired the plaintiff firm, he had no obligation to the plaintiff firm and felt no need to respond.
Attorney Robert DiScipio testified that he received a call from Mr. Clarke in early May, 1988. Clarke wanted him to check the zoning and wetlands regulations to see if the development of CT Page 1283 the lot adjoining his property could be delayed or stopped. There was no discussion about specific fees. Attorney DiScipio understood that Mr. Clarke was "cost sensitive;" that Mr. Clarke did not want him to spend more than a few hours on the project; that Mr. Clarke would accept an oral opinion; and that Mr. Clarke was aware that the charge would be three or four hundred dollars for the few hours work.
The actual bill was $400.00, but attorney DiScipio discounted it to around $300.00. He delayed the billing until December because the defendant had indicated at the time he was going though a difficult financial period.
Attorney DiScipio's recollection of these transactions with the defendant was also based on memory. He produced no contemporaneous notes of the conversations or transactions.
 I.
"A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. [The obligation so assumed is called a promise.] Contracts may be express or implied. These terms however do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such an agreement can only be shown by the acts and conduct of the parties, interpreted in light of the subject matter and of the surrounding circumstances, then the contract is an implied one. Hale v. Fred Benvenuti, Inc., 38 Conn. Sup. 634, 638,458 A.2d 694 (1983), citing Skelly v. Bristol Savings Bank, 63 Conn. 83,87, 26 A. 474 (1893).
Where there is conflicting evidence as to the intention of the parties to undertake a contractual commitment and a lack of documentary evidence, the determination of any contract necessarily must be based on the credibility attributed to the witnesses. Hughes v. Contemporary Missions, Inc., 180 Conn. 150,151-52, 429 A.2d 827 (1980), cited in Rahmati v. Mehri,188 Conn. 583, 586, 452 A.2d 638 (1982).
 II.
The court finds that the plaintiff firm undertook to research and prepare a memorandum on the zoning and inland wetlands status of the property adjacent to the defendant's premises and on the defendant's possible recourse to prevent or CT Page 1284 delay development of that property after being requested to do so by the defendant on May 2, 1988.
The court finds that attorney Austin Wolf informed the defendant of the range for fees charged at that time by the plaintiff firm as being between one hundred and two hundred dollars per hour and that any fee billed would not be "earthshaking."
While there was no express agreement as to the fee to be charged or the hours to be expended, the evidence warrants a finding that the plaintiff rendered the services expecting to be paid; that the defendant requested the services and expected to benefit from those services; and that the defendant impliedly agreed or should have understood that he would pay what the services were reasonably worth at a billing rate of between one hundred to two hundred dollars per hour.
The defendant received the memorandum prepared by the plaintiff. The court believes it reasonable to infer that the defendant did not promptly object to the memorandum or the billings because he had in fact requested the work. It is equally reasonable for the court to infer that the plaintiff law firm had not volunteered to prepare a memorandum on speculation and had not prepared the memorandum on speculation, but rather had acted in reliance upon a reasonable assumption that the defendant had requested the work and would pay for it.
The research was requested by the defendant in early May. The documented result was transmitted to the defendant on June 3rd. That was not an unreasonable period of time.
"An implied contract would arise if the plaintiff rendered services, at the request of the defendant, under an expectation that hey would be paid for and if the defendant either intended to pay for them or the services were rendered under such circumstances that the defendant knew, or as a reasonable person should have known, that the plaintiff did expect payment. Clark v. Diefendorf, 109 Conn. 507, 510, 147 A. 33; Weinhouse v. Cronin, 68 Conn. 250, 253, 36 A. 45; Ford Co. v. Dudley,104 Conn. 519, 523, 133 A. 746. `If the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of the work.' 1 Williston, Contracts (Revised Ed.) Sec. 36." Butler v. Solomon, 127 Conn. 613, 615, 18 A.2d 685 (1941).
Although the defendant did not contact or seek to rescind his request to attorney Wolf, he did thereafter engage attorney CT Page 1285 DiScipio for similar work. The plaintiff did not object to the introduction of evidence of this latter contract between the defendant and attorney DiScipio. The evidence was offered to show that the defendant had not hired the plaintiff, did not intend to pay the plaintiff, and did not benefit from the plaintiff's work. The plaintiff knew nothing about the defendant's contract with attorney DiScipio nor does it appear that attorney DiScipio was aware of the contract of the defendant with attorney Wolf.
"That contract [between the defendant and attorney DiScipio], therefore, in no way tended to show whether the services were rendered under such circumstances as to apprise the defendant, as a reasonable man, that the plaintiff expected payment therefore. The question in such a case is not whether the defendant in fact expected to pay for the services but whether they were rendered under such circumstances that the defendant either knew, or should have known, that the plaintiff expected compensation." Butler v. Solomon, supra, at 616.
 III.
The plaintiff presented Attorney Richard P. Gilardi, as an attorney familiar with the fees customarily charged by members of the Bar of Fairfield County. Attorney Gilardi is also Town Attorney for the Town of Stratford. In his opinion, a billing at the rate of $200.00 per hour for a lawyer of attorney Wolf's experience was not unreasonable in 1988; a billing at the rate of $100.00 and hour for an associate attorney was not unreasonable in 1988.
Ultimately, the issue of whether the fees charged for a particular service were reasonable is an issue to be decided by the court. The billing records are of assistance, but not controlling.
The court has examined the work product — the memorandum and the attachments; the time involved in producing the information for the client; and, the value of the work to the client.
The defendant received a written memorandum describing the history of the lot, the various permits and approvals secured; the conditions appended to the approvals and the feasibility of any recourse. Moreover, the report was in writing with attorney Wolf's summary and advice as to the lack of recourse. The defendant received what he had requested in an unequivocal form.
The court is of the opinion, however, that the delay in submitting the information to the defendant was not warranted by the complexity of the research. The end product could have been CT Page 1286 produced more promptly.
Weighing these factors against the time sheets, the court believes a prompter report would have provided the defendant with all the opinion he needed and might have dissuaded the defendant from seeking another opinion. To the extent that the defendant expended money for attorney DiScipio's opinion, the value to him of the written memorandum was diminished.
The court finds that reasonable worth of the work done for the defendant by the plaintiff firm is $1,200.00.
The defendant had filed a counterclaim, but presented no evidence of any damage as alleged in paragraph 5 of the counterclaim and, in light of the findings of the court, failed to sustain any claim of a CUPTA violation. Judgement may enter in favor of the plaintiff as defendant on the counterclaim.
Judgment may enter in favor of the plaintiff and against the defendant on the complaint for damages in the amount of $1,200.00.
NIGRO, J.