STEVEN LEVINE *v.* POLICE COMMISSION OF
THE TOWN OF FAIRFIELD
(10563)

DUPONT, C. J., FOTI and HEIMAN, Js.

Argued May 4—decision released July 21, 1992

*Donal C. Collimore,* assistant town attorney, for the appellant (defendant).

*Lawrence M. Lapine,* with whom, on the brief, was *Christopher R. Bello,* for the appellee (plaintiff).

DUPONT, C. J. This appeal concerns a challenge, pursuant to General Statutes § 14-313,[1] to certain park-

---

[1] General Statutes § 14-313 provides in pertinent part: "Any person aggrieved by any order or regulation made by any traffic authority under the provisions of this chapter, relating to . . . the establishment of parking restrictions or . . . by the performance of any act pursuant to any provision of this chapter, may take an appeal therefrom to . . . the superior court for the judicial district in which it is located. . . . A written notice of such appeal, addressed to such traffic authority, shall be deposited with, or forwarded by registered or certified mail to, such traffic authority at least ten days before the return day thereof. Upon such hearing, such court or board shall determine whether the order or regulation appealed from is reasonable, and shall thereupon sustain or revoke such order or regulation."

ing restrictions imposed by the defendant police commission of the town of Fairfield (commission) affecting Reef Road near the plaintiff's place of business. The commission appeals from the judgment of the trial court that revoked the commission's order prohibiting parking along the west side of Reef Road between One Rod Highway and Fairfield Beach Road. The commission contends that the trial court improperly (1) proceeded to a determination of the merits when the plaintiff failed to serve and cite in the forty-nine Reef Road residents who petitioned the commission to request the parking restrictions, (2) found that the plaintiff was sufficiently aggrieved by the decision of the commission to allow him to maintain his appeal pursuant to General Statutes § 14-313, and (3) concluded that the parking restrictions adopted by the commission were unreasonable. We affirm the judgment of the trial court.

The plaintiff is the owner of the Seagrape Cafe, an eating and drinking establishment located at 1144 Reef Road in Fairfield, which is at the intersection of Reef Road and Fairfield Beach Road. Reef Road runs in a north-south direction for at least one mile from the Post Road on the north, terminating at its intersection with Fairfield Beach Road. Fairfield Beach Road runs in an east-west direction along the town's coastline.

Neither Reef Road nor Fairfield Beach Road is exclusively residential. Both are interspersed with commercial and other nonconforming uses. Although the intersection of the two roads is the site of several commercial properties, that portion of Reef Road running north from the plaintiff's business premises to its intersection with One Rod Highway, a distance of approximately 800 feet, is residential and consists of multifamily homes. In this area, Reef Road is thirty-six feet wide. Allowing seven feet for parking on both sides leaves a twenty-two foot wide travel portion of

the highway, or eleven foot travel lanes in either direction. Evidence before the trial court showed that these dimensions meet generally accepted standards for commercial and residential areas.

The plaintiff's business premises had been the site of a bar-cafe for over fifty years before the plaintiff purchased the property in 1983. Although the Seagrape has an occupancy limit of 180 patrons, it has only sixteen on-site parking spaces and depends on on-street parking for its patrons. Prior commercial establishments at 1144 Reef Road were likewise dependent on on-street parking, which was not restricted in any way.

The commission is the traffic authority for the town of Fairfield. At its regular monthly meetings, the commission decides town traffic issues. Prior to making any decision, the commission conducts a traffic survey between 9 a.m. and noon on the Wednesday preceding its monthly meeting. This survey is conducted by at least one member of the commission, along with a liaison from the police department, visiting the site that is the subject of a traffic or parking request. The commissioner who visits the site then makes a recommendation to the full commission regarding the appropriate action.

For some time prior to August 9, 1989, the date of the commission's action, the commission had received numerous complaints concerning crowds, noise, and resulting traffic congestion at the southern end of Reef Road, particularly in the late night and early morning hours. The police department had initiated extra patrols during those hours on the weekends but had little success in resolving the complaints.

In July, 1989, at a regular meeting of the commission, a resident of Reef Road requested that the commission restrict parking along one side of Reef Road from One Rod Highway to Fairfield Beach Road. The

commission suggested that he put together a petition of the area residents regarding the proposal.

On July 26, 1989, the resident sent a letter to the commission. Enclosed with this letter was a "Letter of Request," which requested that the commission "explore the possibility of restricting parking to only one side of Reef Road between One Rod Highway and Fairfield Beach Road" and which was signed by forty-nine residents of that area.[2]

---

[2] The full text of the "Letter of Request" read as follows: "We, the undersigned residents of Reef Road, between One Rod Highway and Fairfield Beach Road, in the town of Fairfield, Connecticut, do hereby request that the Police Commission explore the possibility of restricting parking to only one side of Reef Road between One Rod Highway and Fairfield Beach Road, either by local or a time basis.

"We ask that this be done as we feel that during the night time periods, a public safety hazard exists for the following reasons:

1. Traffic congestion along with bumper to bumper on street parking during certain hours, impairs access for Fire Department response as well as other emergency services to our homes along this section of Reef Road.

2. Reef Road is the main and most direct route for emergency services such as the Fire Department, to the western end of Fairfield Beach Road. Traffic congestion and bumper to bumper on street parking, with back ups to One Rod Highway, jeopardizes and could result in delays to those residents also.

3. Traffic and present parking in this area would make it impossible for a number of Fire Department vehicles to pass each other and position themselves at the same time in the event of a large, fast spreading marsh fire, which is a common occurrence.

4. During the periods when traffic and parking are excessive, large groups of people can be found walking and gathering the streets, further making access, as well as driving by the public, quite impossible and dangerous.

5. Crowding around parked vehicles during and after the large parties that have plagued the area, further obstructs passage through lower Reef Road, as well as being a source of noise and litter such as broken beer bottles, etc.

6. The high density of both people and structures in this portion of Reef Road, along with the close proximity of homes to each other, make all the more vital unimpaired or undelayed access for Fire Department services.

"It should be noted, again, that generally the congestion and access problems occur at night for various reasons. With that in mind, we ask that use of restricted parking based on a time period, much like the parking restrictions implemented on streets surrounding Fairfield High School, be given special consideration.

On August 2, 1989, three commissioners together with a member of the police department visited the lower Reef Road area to conduct a traffic survey. This visit took only a matter of minutes and occurred between 9 a.m. and noon. None of those conducting the traffic survey, including the accompanying police officer, possessed any special traffic expertise.

As a result of the survey, these persons recommended that parking be restricted on the west side of Reef Road from One Rod Highway south to Fairfield Beach Road between the hours of 8 p.m. and 6 a.m. This recommendation was conditioned on receipt of "a petition reflecting a consensus of the residents."

At the August 9, 1989 regular meeting of the commission, the petition was presented to the commission as well as a survey of the residents of lower Reef Road indicating support for the recommendation.[3] The commission then voted to restrict parking along the west side of Reef Road from One Rod Highway to Fairfield Beach Road from 8 p.m. to 6 a.m.[4]

The plaintiff appealed to the Superior Court pursuant to General Statutes § 14-313 because the parking restriction adversely affected his business. The trial court concluded that the action of the commission was beyond the legitimate police powers of the commission

"We feel that restricted parking on one side of the street during these critical periods, would greatly help improve both access and safety hazards that now exist, yet still allow street parking on both sides during the noncritical daytime hours."

[3] Minutes of the August 9, 1989 commission meeting reflect the following results of the survey: "28-houses in favor, 3 no signature, 6 not for it, 7 not available." Evidence before the trial court showed that the plaintiff was not apprised of the petition or the request made to the commission until after its action which is the subject of this appeal.

[4] At the August 9 meeting, the commission also approved a "no parking" order affecting portions of Fairfield Beach Road on both sides of its intersection with Reef Road. These parking restrictions are not the subject of this appeal.

and, therefore, was unreasonable because it was "not designed to regulate parking or traffic in response to any overall public need" but "was more directly concerned with the regulating, adverse or otherwise, of the business of the plaintiff." The court revoked the parking restriction and ordered the removal of any signs authorized by the commission to accomplish that purpose. This appeal followed.

I

The commission first claims that the trial court should not have proceeded to determine the merits of the plaintiff's appeal because the plaintiff failed to serve and cite in the forty-nine Reef Road residents whose petition prompted the challenged commission action. The commission argues that once the forty-nine petitioners were successful before the commission, they acquired a special interest in the proceedings that would be affected by the plaintiff's appeal. Consequently, the commission contends, they were necessary and indispensable parties who needed to be served proper citations to appear as parties. The commission's argument rests on the holding in *Fong* v. *Planning & Zoning Board of Appeals,* 212 Conn. 628, 563 A.2d 293 (1989). We conclude, however, that *Fong* is inapplicable here.

"Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience." *Gaudio* v. *Gaudio,* 23 Conn. App. 287, 305–306, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). In such cases, joinder is mandated because due process principles make it "essential that [an indispensable party] be given notice and an opportunity to protect his interests by making him a party to the [action]." *Fong* v. *Planning & Zoning Board of Appeals,* supra, 634.

Initially, we note that the commission raised the issue of the plaintiff's failure to join the forty-nine petitioners by way of a motion to dismiss. Since § 14-313 requires that only the local traffic authority be named and served in an appeal that challenges the establishment of parking restrictions, the failure to serve and cite the petitioners does not implicate the trial court's subject matter jurisdiction over the plaintiff's appeal. Id., 634–36. Consequently, a motion to dismiss is not the proper method to raise the issue of the nonjoinder of a party. Instead, the exclusive remedy for nonjoinder of indispensable parties is by way of a motion to strike. *W. G. Glenney Co.* v. *Bianco,* 27 Conn. App. 199, 202, 604 A.2d 1345 (1992). Although the commission did not properly raise the issue of nonjoinder in the trial court and now seeks to raise a claim on appeal that was not distinctly raised below, "[w]e believe that because of the definition of indispensable party and its relation to the proper disposition of an action, it is necessary for us to review the [commission's] claim even though [it] did not move to strike the plaintiff's complaint." Id., 203.

In *Fong,* the plaintiffs were issued a building permit by the building inspector. Charles W. Pettengill, Jr., the owner of property adjacent to the plaintiffs' property, appealed the granting of the building permit to the planning and zoning board of appeals, which sustained his appeal and revoked the plaintiffs' permit. The plaintiffs then appealed the board's decision to the Superior Court, but did not name Pettengill as a party.

Our Supreme Court concluded that an applicant who receives a favorable decision from a planning and zoning board of appeals is a necessary and indispensable party to an appeal by persons aggrieved by the decision "because were the appeal to be sustained the result would be the invalidation and deprivation of *rights granted to the applicant* by the zoning board." (Empha-

sis added; internal quotation marks omitted.) *Fong* v. *Planning & Zoning Board of Appeals,* supra, 633. The court further explained that "Pettengill was not merely an abutter, but the person who initiated before the board the very proceeding that has resulted in the present appeal. Unlike other abutters or aggrieved members of the public, whose interests may be regarded as adequately represented by the board itself, he had become a party to the administrative proceeding. *If he had not prevailed before the board, he could have appealed from its decision."* (Emphasis added.) Id.

Here, by contrast, the parking restrictions approved by the commission granted no rights to the petitioners. Consequently, unlike *Fong*, the decision of the trial court sustaining the appeal could not invalidate or deprive the petitioners of any rights granted to them by the traffic authority. Additionally, if the persons who signed the petition had not prevailed before the police commission, they could not have appealed the decision. General Statutes § 14-313 allows an appeal only by a "person aggrieved by any order or regulation made by any traffic authority . . . relating to . . . the establishment of parking restrictions . . . or by the performance of any act pursuant to the provisions of [Chapter 249]." Unlike General Statutes § 8-8 at issue in *Fong*, § 14-313 does not provide a right of appeal from any "decision" by a traffic authority. The purpose of § 14-313 is to permit a challenge to the exercise of police powers regulating traffic and parking, not to allow a challenge to the failure of the local traffic authority to exercise its statutory powers.

The forty-nine petitioners, while obviously interested in the outcome of the plaintiff's appeal to Superior Court, were neither necessary or indispensable parties to the disposition of that appeal. Instead, they are more properly regarded as members of the general public whose interests are adequately represented by the com-

mission itself. For these reasons, the due process concerns that compelled the conclusion that Pettengill was an indispensable party in the *Fong* appeal are absent in the present case. Thus, the trial court properly proceeded to consider the merits of the plaintiff's appeal notwithstanding the plaintiff's failure to join the forty-nine petitioners as parties to the appeal.

## II

The commission next argues that the trial court improperly concluded that the plaintiff was aggrieved by the Reef Road parking restrictions. "The jurisdictional requirement of aggrievement serves both practical and functional purposes in assuring that only those parties with genuine and legitimate interests are afforded an opportunity to appeal. . . . A party [is] aggrieved if it successfully demonstrates a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole, and successfully establishes that this specific, personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted.) *Zoning Board of Appeals* v. *Planning & Zoning Commission*, 27 Conn. App. 297, 300–301, 605 A.2d 885 (1992). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Hall* v. *Planning Commission*, 181 Conn. 442, 445, 435 A.2d 975 (1980).

The commission contends that the plaintiff failed to demonstrate that he has a specific interest that has been injuriously affected by its action. Specifically, the commission argues that because the right of the plaintiff (and his customers) to park along the west side of Reef Road is no different from that of the general public, he cannot satisfy the test for aggrievement.

The trial court concluded that the plaintiff was aggrieved. This finding will not be disturbed on appeal unless the subordinate facts do not support that finding. *Walls* v. *Planning & Zoning Commission,* 176 Conn. 475, 476, 408 A.2d 252 (1979). Here, the court found that the plaintiff was affected in the conduct of his business by the on-street parking restriction. No reported case has yet defined the specific interest necessary for aggrievement within the terms of General Statutes § 14-313.

The commission correctly points out that the plaintiff's aggrievement cannot rest on a claim of any property right in parking along the west side of Reef Road. Parking on public streets is not a property right as such, but a general right of the community. See *State* v. *Muolo,* 119 Conn. 323, 326, 176 A. 401 (1935); 10A E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 30.58, p. 375. Although the allowance of parking on a public street is not a property right, it is a right relating to the use of a public street, which, if restricted, can, in some instances, form the basis for aggrievement. If this were not so, the right of appeal given by § 14-313 could never be exercised because no individual member of the public could ever be aggrieved.

The trial court, however, did not rest its finding of aggrievement on any property right of the plaintiff in parking on Reef Road. Rather, the court found that the residents' petition that prompted the parking restriction "was aimed at the business of the plaintiff, with an ulterior desire to so restrict or limit it that it might hopefully vanish from the neighborhood," and concluded that the parking regulations "were not designed to regulate parking or traffic in response to any overall public need . . . but more pointedly to restrict or regulate the plaintiff's business." This analysis is relevant as a factor in determining aggrievement. *State*

*Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 303, 524 A.2d 636 (1987).

The plaintiff's property is located in a commercial zone within the town of Fairfield. It had been the site of a bar and restaurant for more than fifty years. As such, the plaintiff had a "predictable fourteenth amendment property right in the commercial use" of his property. *Brady* v. *Town of Colchester,* 863 F.2d 205, 212–13 (2d Cir. 1988). Moreover, the plaintiff contended, and the trial court agreed, that this specific personal and legal interest was specially and injuriously affected by the challenged parking restrictions because the parking restrictions are an unreasonable governmental regulation designed to drive him out of business. Cf. *Bello* v. *Walker,* 840 F.2d 1124, 1129 (3d Cir.), cert. denied, 488 U.S. 851, 109 S. Ct. 134, 102 L. Ed. 2d 107, 488 U.S. 868, 109 S. Ct. 176, 102 L. Ed. 2d 145 (1988) (substantive due process violation when governmental regulation affecting property is arbitrary, irrational, or tainted by improper motive). Additionally, the area affected by the challenged parking restrictions was close to the plaintiff's business and the trial court found that the parking restrictions had an adverse impact on the plaintiff's business revenues.

An economic interest that is injuriously affected may afford a basis for aggrievement; *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 702, 345 A.2d 563 (1974); as long as the economic deprivation is not speculative. *Diamond* v. *Charles,* 476 U.S. 54, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1976); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 497, 400 A.2d 726 (1978). In light of the proximity of the plaintiff's business to the area affected by the parking restrictions, the economic deprivation suffered by the plaintiff as a result of the restrictions, and the purpose of the commission's action to affect the operation of the plaintiff's business, the trial court properly determined

that the plaintiff was sufficiently aggrieved by the commission's decision to pursue his appeal challenging the Reef Road parking restrictions.

## III

The commission's last claim is that the trial court improperly concluded that the parking restrictions on the west side of Reef Road were unreasonable. The commission contends that the trial court's method of determining whether the parking restrictions were "reasonable" under General Statutes § 14-313 was flawed. The commission argues that the reasonableness of its parking regulation should be evaluated by its effect and not an analysis of its purpose or the means employed to achieve its purpose. We do not agree.

The commission urges us to evaluate the reasonableness of its parking restrictions under the standard enunciated by the United States Supreme Court in *Federal Power Commission* v. *Hope Natural Gas Co.,* 320 U.S. 591, 64 S. Ct. 281, 88 L. Ed. 333 (1944). "The issue before the Supreme Court of the United States in *Hope* was the interpretation of § 4 (a) of the federal Natural Gas Act of 1938, 52 Stat. 821, 15 U.S.C. § 717, which provides that gas rates 'shall be just and reasonable.' . . . The court ultimately concluded that '[u]nder the statutory standard of "just and reasonable" *it is the result reached not the method employed which is controlling.* . . . If the total effect of a rate order cannot be said to be unjust and unreasonable, judicial inquiry is at an end.' Id., 602." (Emphasis added.) *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 633–34, 583 A.2d 906 (1990).

We are unpersuaded that the *Hope* test provides the proper standard for evaluating the validity of municipal regulations. The power to regulate parking on public streets is a universally recognized police power of the state that may be delegated to its municipal subdivi-

sions. *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958); *Cassidy* v. *Waterbury,* 130 Conn. 237, 239, 33 A.2d 142 (1943); see also 7A Am. Jur. 2d, Automobiles and Highway Traffic § 271. "It is unquestionably true that any regulation, under the police power, for the use of property must have a reasonable relation to the public health, safety and welfare and must operate in a manner which is not arbitrary, destructive or confiscatory. *We examine the ordinance to decide whether in its purpose and operation generally,* it satisfies the rule." (Citations omitted; emphasis added.) *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 616, 124 A.2d 881 (1956). "If an ordinance is found to be partial and unequal in its operation as between different classes, if it is manifestly unjust, if it discloses bad faith, or if it involves such oppressive and gratuitous inference with the rights of the citizen as can find no justification in the minds of reasonable [people], the court might well say that the legislature never intended to give authority to make such rules, and that they are unreasonable and ultra vires." (Footnote omitted.) 56 Am. Jur. 2d 429, Municipal Corporations, Counties, and Other Political Subdivisions § 388.

Judicial review of challenged municipal regulations, therefore, necessarily involves a determination of whether the purposes asserted in support of the regulation are, in fact, served, or whether other, improper purposes have motivated the municipal action and affect its operation. See *Builders Service Corporation* v. *Planning & Zoning Commission,* 208 Conn. 267, 545 A.2d 530 (1988). Moreover, the means adopted to produce the result must bear a rational relationship to the stated purpose of the ordinance. *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 22, 523 A.2d 467 (1987); *Bush* v. *Quality Bakers of America,* 2 Conn. App. 363, 370, 479 A.2d 820, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984); *DeLeon* v. *Jacob Bros., Inc.,* 38 Conn. Sup.

331, 446 A.2d 831 (1981), appeal dismissed, 456 U.S. 952, 102 S. Ct. 2026, 72 L. Ed. 2d 447 (1982). For these reasons, the *Hope* test, which calls on the reviewing court to look at the result alone, is not an appropriate standard by which to review municipal action.

The trial court properly concluded that the challenged parking restrictions were not rationally related to a legitimate governmental concern. The court first examined the public safety concerns set forth in the residents' petition; see footnote 2, supra; which represent the only reasons articulated in support of the parking restrictions that were subsequently adopted. The court noted that two of those reasons had nothing to do with the public safety on lower Reef Road. Further, the court noted that the remaining concerns, namely, that traffic and parking on lower Reef Road impairs access by fire department vehicles as well as any other emergency service vehicles, were not supported by the evidence presented. No testimony or other facts of record showed that any of these departments had experienced difficulties in the performances of their duties as a result of traffic congestion in the affected area. In fact, Reef Road meets or exceeds generally accepted standards regarding recommended dimensions of streets. Furthermore, no testimony was offered to show how the parking restrictions, limited to one side of a small portion of Reef Road, could realistically solve the problems identified in the petition. In addition, the court was concerned that the traffic survey, on which the commission at least in part based its action, was conducted during hours that were not the subject of the subsequent parking restrictions.

On the basis of all of this evidence, the court concluded that the petition was "not motivated by any considerations of public safety whatsoever." The court further concluded that the "conduct of the commission was more directly concerned with the regulating,

adverse or otherwise, of the business of the plaintiff
. . . an objective for which the traffic commission was
not empowered, unless the regulation corrected an
obvious public need or purpose. This has not been
shown by any available testimony.''

In addition to concerns regarding emergency vehi-
cle access to lower Reef Road, the conditions affect-
ing public welfare and safety identified by the
commission that it sought to regulate through the park-
ing restrictions also included noise and congestion
caused by *pedestrian* activity in the area of lower Reef
Road. While these concerns are legitimate concerns for
the exercise of a municipality's police power, the exer-
cise of those powers is arbitrary and unreasonable
unless there exists a direct relationship between the
conduct sought to be controlled and the regulated activ-
ity. Here, the offending conduct, namely, the gather-
ing of people in the street and on the sidewalks of this
neighborhood, is not directly related to automobile
parking. The power to regulate parking is part of the
power to regulate the use and flow of *vehicular* traf-
fic. Problems related to the activities of pedestrian
crowds are not the legitimate concern of a local traf-
fic authority, but fall instead within the purview of the
exercise of other police powers. See, e.g., General Stat-
utes §§ 53a-181 (breach of peace), 53a-181a (creating
a public disturbance), 53a-182 (disorderly conduct),
53a-182a (obstructing free passage). Once the town of
Fairfield permitted the plaintiff to use his property for
commercial purposes, it was clear that traffic, vehicu-
lar and pedestrian, on lower Reef Road was going to
increase. While commercial development may bring
with it certain undesirable consequences, only those
problems related to the use of the streets by motor vehi-
cles and the flow of traffic caused by such activity can
be rationally related to any regulation approved by a
local traffic authority.

Because the means adopted here did not bear directly on the concerns that the commission sought to address, the trial court correctly concluded that the purpose of the regulation was to affect adversely the plaintiff's business. The fact that the evidence showed that there has been a decrease in the number of complaints to the police and a freer movements of traffic subsequent to the adoption of the parking restrictions is of no moment. Since the problems being attacked by the commission were not shown to have anything to do with the use of the streets by motor vehicles as opposed to the conduct of individuals who own or operate them, the solution to those problems could not legitimately involve restrictions on the use of the streets by motor vehicles. Consequently, as determined by the trial court, the parking restrictions approved by the commission were, under the circumstances of this case, unreasonable and beyond the valid exercise of police powers conferred on that public body.

The judgment is affirmed.

In this opinion the other judges concurred.