[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
CT Page 8728
The defendant, Campania Management Company, Inc., has moved to strike all four counts of the plaintiff's Complaint dated July 13, 2001 on the ground that the Complaint fails to state claims upon which relief can be granted in that all counts fail to join an indispensable/necessary party, Count One is insufficient because as a matter of law no contract exists between the parties, Count Two does not allege sufficient facts of bad faith to constitute intentional, willful, reckless and/or wanton conduct; Count Three does not allege sufficient facts to constitute a general business practice under CUIPA/CUTPA; and Count Four, a declaratory action, is legally insufficient for the same reasons as Count One and is an inappropriate, premature form of relief.
Factual Allegations
The Complaint, dated July 13, 2001, contains the following factual allegations. BlueRidge Health Services, Inc. d/b/a Elmcrest Hospital d/b/a Elmcrest Psychiatric Hospital d/b/a Elmcrest Behavioral Health Network ("Elmcrest") is a named insured under Hospital Professional Liability Policy 98CGI2000.0398 ("Policy") with insurer Credit General Insurance Company ("Credit General"). The Policy was executed by Dennis R. Santoli, secretary and treasurer of Campania Management Company, Inc. ("Campania"), as attorney-in-fact and placed with Credit General on behalf of plaintiff. Plaintiff appended the Policy to the complaint.
The Complaint further alleges that Elmcrest gave timely notice to Campania and Credit General of the McClain Claim, seeking a defense and coverage. See Complaint, ¶ 11 (First Count). The McClain Claim arises out of the March 22, 1998 death of Andrew McClain, an eleven year old boy, who was a patient in Elmcrest Psychiatric Hospital at the time. Elmcrest alleges in the Complaint that it was and is entitled to a defense and indemnity for the McClain Claim under the Policy.
In response to Elmerest's notice of the McClain claim, on or about December 17, 1998, Campania sent a reservation of rights letter to Elmcrest stating that it "is authorized by Credit General Insurance Company . . . as its managing underwriter and general agent . . . to manage this claim in accordance with the policy." See Complaint, ¶ 12 (First Count). This letter has also been made a part of the plaintiff's Complaint. Elmcrest alleges that the December 17, 1998 reservation of rights letter constitutes a contract between Campania and Elmcrest, and that Campania's agreement with Credit General to act as Credit General's agent in managing the McClain claim constitute a contract of which Elmcrest was the third party beneficiary. CT Page 8729
In breach of these contractual obligations, Campania subsequently failed to manage the McClain Claim in accordance with the Policy because Campania failed to negotiate the settlement of the McClain Claim in Elmcrest's interests. Among other things, Elmcrest alleges that Campania, through its representative Dennis Santoli, refused to bargain or otherwise participate in good faith during a December 31, 1998 mediation conference before Justice Angelo G. Santaniello on the McClain Claim. Elmcrest further alleges that Mr. Santoli refused to consider Justice Santaniello's assessment of the McClain Claim and refused to offer a fair or reasonable amount to settle the case. Moreover, the plaintiff in the McClain Claim subsequently made an Offer of Judgment to settle the McClain Claim for $1,000,000. Elmcrest alleges that Campania refused to accept the Offer of Judgment or even to negotiate further on behalf of Elmcrest despite the strong recommendations of two attorneys to do so. Thereafter, in January 2001, Credit General was placed into liquidation in Ohio. Recently, the McClain Claim against Elmcrest was settled for an amount well in excess of the plaintiff's prior Offer of Judgment, without Credit General's participation.
Based upon the allegations summarized above, Elmcrest alleges that Campania's failure to settle the McClain Claim at the time of the mediation and at the time McClain made an Offer of Judgment constitutes a breach of Campania's agreements with Elmcrest and Credit General. In addition to the breach of contract claim, Elmcrest alleges that it is entitled to damages as a result of Campania's breach of the covenant of good faith and fair dealing arising out of the contracts between Campania and Elmcrest and Credit General to manage the McClain Claim in accordance with the Policy. See Complaint, ¶¶ 1-31 (Second Count). Elmcrest further alleges that it is entitled to relief under the Connecticut Unfair Trade Practices Act based upon Campania's unfair claim settlement practices in violation of Section 38a-816 (6) of the Connecticut Unfair Insurance Practices Act. See Complaint, ¶¶ 1-38 (Third Count). Finally, Elmcrest alleges that it is entitled to declaratory relief regarding Campania's obligations to defend the McClain Claim, to negotiate any settlement offers in good faith and to indemnify Elmcrest.See Complaint, ¶¶ 1-41 (Fourth Count).
 Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, CT Page 8730215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
Although generally, a "speaking motion to strike" (one imparting facts outside the pleadings) will not be granted, Doe v. Marselle,38 Conn. App. 360, 364, 660 A.2d 360 (1995); attachments and exhibits to a complaint are deemed part of the pleadings for the purposes of considering a motion to strike. See Redmond v. Matthies, 149 Conn. 423,425-26, 180 A.2d 639 (1962); A. C. Nielsen Co. v. Wang Laboratories,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312400 (February 3, 1995, Maiocco, J.); Sabo v. AutomatedLight Technologies, Inc., Superior Court, judicial district of Waterbury, Docket No. 110800 (May 5, 1993, Pittman, J.) (8 C.S.C.R. 577)
Count One of the Complaint alleges breach of contract based on language of the December 17, 1998 Reservation of Rights Letter wherein Campania, as the claims administration entity for the Policy asserted a coverage position on behalf of Credit General Insurance Company, as to the allegations in the McClain complaint. That letter, which the plaintiff has made exhibit to the Complaint provides, in part:
As you are aware, you have made a claim for defense and coverage regarding allegations in th lawsuit styled William Kroll, Administrator of the Estate of Andrew McClain v. Elmcrest Psychiatric Hosptial, filed in the Superior Court, JD of Hartford at Hartford (the"lawsuit"). Campania Management Company, Inc. is authorized by Credit General Insurance Company (also referred to as "the Company") as its managing underwriter and general agent to issue this reservation of rights letter and to manage this claim in accordance with the policy. We have reviewed the allegations in the complaint and other relevant information, including policy number 98CG12000.0398 (the "policy"). Based on this review, it appears that the plaintiff in this lawsuit seeks certain damages that are not covered under the policy. This letter CT Page 8731 explains certain coverage issues, the terms and conditions, and reserves all of rights (sic) under the policy.
 . . . . . In the complaint, plaintiff alleges negligence, recklessness, failure to provide humane and dignified treatment, violation of psychiatrist/patient privilege, libel and unfair trade practices. The plaintiff demands money damages, attorney fees, costs of suit and punitive damages.
 Plaintiff alleges that Elmcrest Psychiatric Hospital improperly physically restrained Andrew McClain on March 22, 1998 resulting in his death. The applicable policy is 98CG12000.0398, issued to BlueRidge Health Services, Inc. d/b/a Elmcrest Hospital, d/b/a Elmcrest Psychiatric Hospital d/b/a Elmcrest Behavioral Health Network, effective from January 1, 1998 to January 1, 1999. This policy contains a general aggregate limit of $15,000,000.00 and an each occurrence limit of $5,000,000.00.
 We have reviewed the suit and policy and determined that there is no coverage for some of the allegations.
 . . . . . Specifically, the allegations of recklessness and conscious indifference, unfair trade practices and punitive damages are excluded from the above referenced policy for the reasons set orth below under the "Explanation" heading.
 . . . . .
The Company reserves its right to reevaluate coverage as the Company's investigation into this matter is ongoing. The Company hereby notifies you tht it is undertaking to investigate the circumstances giving rise to the above claim. This investigation is not to be construed as a waiver of any right it may have on the said policy and is subject to the terms and conditions of the said policy. CT Page 8732
The defendant argues that all Counts of the Complaint should be stricken because the plaintiff has failed to sue th insurer, Credit General Insurance Company, an indispensable party.
"[T]he exclusive remedy for nonjoinder of parties is by motion to strike. . . . This exclusive remedy applies to nonjoinder of indispensable parties." (Citations omitted; internal quotation marks omitted.) George v. St. Ann's Church, 182 Conn. 322, 325, 438 A.2d 97
(1980); see also Levine v. Police Commission, 28 Conn. App. 344, 351,612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 823 (1992). "A party is necessary if its presence is absolutely required in order to assure a fair and equitable trial." (Internal quotation marks omitted.) Biro v.Hill, 214 Conn. 1, 6, 570 A.2d 182 (1990). "Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy is such condition that its final disposition may be inconsistent with equity and good conscience." (Internal quotation marks omitted.) Hilton v. New Haven, 233 Conn. 701, 722, 661 A.2d 973 (1995); see also W. G. Glenney Co. v. Bianco, 27 Conn. App. 199, 203, 604 A.2d 1345
(1992).
As the Complaint alleges, Credit General was placed into liquidation in Ohio in January 2001. With respect to liquidation proceedings against an insurer the applicable Ohio statute provides in pertinent part:
 Upon entry of an order appointing a liquidator of a domestic insurer or of an alien domiciled in this state, no civil action shall be commenced against the insurer or liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further prosecuted after the entry of the order.
Ohio Rev. Code § 3903.24(A) (emphasis added). Thus Elmcrest could not legally commence or prosecute an action against Credit General. If the court were to strike all counts because Credit General was "indispensable," it would end the action because Credit General cannot be added. Such a result is inequitable and contrary to Connecticut practice. See Connecticut General Statutes § 52-108 ("An action shall not be defeated by the nonjoinder . . . of parties."); Practice Book § 9-19 ("Except as provided in Section 10-44 . . . no action shall be defeated by the nonjoinder . . . of parties."). Accordingly, for this reason alone, Campania's argument that Credit General is an indispensable party provides no basis for striking any of the counts of Elmcrest's Complaint. CT Page 8733
More importantly, Credit General is not an "indispensable" party under Connecticut law. A party is deemed indispensable when its interest in the controversy is such that a final decree cannot be made without either (i) affecting that interest, or (ii) leaving the controversy in such a condition that its final disposition may be inconsistent with equity and good conscience. Levine v. Police Comm'n of Fairfield, 28 Conn. App. 344,351, 612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 822 (1992),citing, Gaudio v. Gaudio, 23 Conn. App. 287, 305-06, 580 A.2d 1212 cert.denied, 217 Conn. 803, 584 A.2d 471 (1990).
Credit General cannot be a party to this action because it is in liquidation proceedings in Ohio and cannot, therefore, have any interest in this action. Accordingly, the first test, that a final decree cannot be made without affecting Credit General's interests cannot be met here.
Furthermore, the controversy is not in such a condition that a final, equitable disposition cannot be made without Credit General. Contrary to Campania' arguments, the plaintiff is not suing to recover under the Policy. It is suing because Campania's conduct prevented it from being indemnified under the Policy. Therefore, while the issue of coverage under the policy is relevant to prove a causal connection between Campania's conduct and the plaintiff's losses, the plaintiff does not seek to recover under the Policy. Therefore, Credit General is not an indispensable party and the plaintiff's failure to join Credit General as a defendant does not support Camapnia's Motion to Strike.
The interpretation of a written contract is a question of Law. Gianettiv. Norwalk Hospital, 64 Conn. App. 218, 230, 779 A.2d 847 (2001); Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 179, 544 A.2d 1185
(1988). A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. The obligation so assumed is called a promise. Boland v. Catalano, 202 Conn. 333, 337, 521 A.2d 142 (1987);Skelly v. Bristol Savings Bank, 63 Conn. 83, 87, 26 A. 474 (1893); Halev. Fred Benvenuti, Inc., 38 Conn. Sup. 634, 638-39, 458 A.2d 694 (1983). It is apparent from the language set forth above that the Reservation of Rights letter was written by Campania as agent of Credit General to advise Elmcrest that Credit General was defending against the McClain claim under a reservation of rights and that Campania would act on behalf of Credit General in managing the defense. Campania assumed no obligation on its own behalf, only as an agent of Credit General. In that capacity it assumed no greater obligation than already existed under the Policy. The Reservation of Rights letter was not signed by Elmcrest, and there is nothing else in the letter which could possibly be construed as an agreement by Elmcrest to assume any obligation. Nor does the letter CT Page 8734 confer any additional rights on Elmcrest other than those it already had under the Policy.
Based on the foregoing, the plaintiff fails to state a cause of action for breach of contract, because the Complaint as augmented by the purported contract (Reservation of Rights letter), fails to allege the existence of a contract between the plaintiff and Campania.
The Reservation of Rights letter also serves as the basis of the plaintiff's third party beneficiary claim. The existence of a third party beneficiary contract exists only if the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party. Gazo v. City of Stamford, 255 Conn. 245, 261, 765 A.2d 505
(2001). The Reservation of Rights letter is not an agreement between Campania and Credit General. It is a notification that Campania will act as Credit General's agent under the terms of the insurance policy. Thus it creates no greater rights in Elmcrest than Elmcrest has under Policy. Therefore, the Motion to Strike the First Count for Breach of contract is granted.
The Second Count of the Complaint alleges a violation of the covenant of good faith. The implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. Hoskinsv. Titan Value Equities Group, Inc., 252 Conn. 789, 793, 749 A.2d 1144
(2000); Forte v. Citicorp Mortgage, 66 Conn. App. 475, 484, 784 A.2d 1024
(2001). However, the plaintiff does not allege that Campania has violated the covenant of good faith present in the purported contracts alleged in Count One. Rather, it alleges that Campania owed the plaintiff the same duty of good faith that Credit General, the insurer, owed under the Policy.
Although Connecticut recognizes a common law duty of an insurer to act in good faith in the settlement of claims if its insured, a cause of action for breach of that duty may be asserted only against an insurer.Scribner v. AIU Insurance Co., 43 Conn. Sup. 147, 151-2, 647 A.2d 48
(1994) (citing Iversen v. Superior Court of Los Angeles County,57 Cal.App.3d 168, 127 Cal.Rptr. 49 (1976) and Gruenberg v. Aetna Ins.Co., 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973)).
In Scribner, an injured passenger of an accident sued the auto insurer, the adjuster and the attorney who represented both the insurer and the adjuster. The court held that "an action for bad faith, therefore, does not lie against a person who is not a party to the contract of insurance, including an attorney"; id., at 151-2; by relying on the reasoning in Gruenberg and Iversen. CT Page 8735
In Gruenberg, an insured sued three insurers, an investigative service hired by the insurers, a claims adjuster employed by the investigative service, the law firm that represented the insurers in the resolution of the plaintiff's claim and an attorney employed by the law firm. The plaintiff sought damages resulting from alleged bad faith and outrageous conduct in denying payment of the fire policies issued by the insurers. The Gruenberg court, addressing the liability of those defendants other than the insurers, concluded: "Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing." Id. at 576, 108 Cal.Rptr. 480, 510 P.2d 1032.
In Iversen, an insured brought an action alleging bad faith against both the insurer and the claims supervisor employed by the insurer. The court held: "While breach of that obligation sounds both in contract and in tort, the existence of the duty which is the subject of the breach depends upon a contractual relationship. . . . The particular relationship is that created by the contract of insurance in which a covenant of good faith and fair dealing is implied as a matter of law. . . . Since Iversen is an agent of the insurer and not a party to the contract of insurance, he is not bound by the implied covenant and owes no duty to the insured not to breach it." (Citations omitted.) Iversen, supra, 57 Cal.App.3d 168,127 Cal.Rptr. 49.
Here, Campania is not a party to the Policy under which Credit General insured Elmcrest, the insured. Throughout the Policy, only Credit General (the "Company") is construed to be the insurer. Campania and Dennis Santoli, as attorney-in-fact, were agents of Credit General, the insurer, and, are not liable for breach of the covenant of good faith and fair dealing. The Second Count of the Complaint is, therefore, ordered stricken.
Count Three alleges violations of Connecticut General Statutes §42-110a et seq.("CUTPA") based on a purported violation of General Statutes § 38a-816 (6) ("CUIPA"). Specifically, the plaintiff alleges that Campania, as part of its normal business practice, has engaged in the same or similar unfair claim settlement practices with such frequency to indicate a general business practice.
"In requiring proof that the insurer has engaged in unfair settlement practices with such frequency as to indicate a general business practice, the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct. . . . [T]he . . .alleged improper conduct in the handling of a single insurance claim,without any [allegations] of misconduct by the defendant in theCT Page 8736processing of any other claim, does not give rise to the level of ageneral business practice as required by § 38a-816 (6)." (Citation omitted; emphasis added; internal quotation marks omitted.) Lees v.Middlesex Insurance Co., 229 Conn. 842, 849, 643 A.2d 1282 (1994). Seealso Mead v. Burns, 199 Conn. 651, 509 A.2d 11 (1986).
"[A] CUTPA claim based on an alleged unfair claim settlement practice prohibited by § 38a-816 (6) [requires] proof, as under CUIPA, that the unfair settlement practice had been committed or performed by the defendant with such frequency as to indicate a general business practice. In so holding, [the Connecticut Supreme Court] observed that a CUTPA claim based on the public policy embodied in CUIPA must be consistent with the regulatory principles established therein, and that [t]he definition of unacceptable insurer conduct in [§ 38a-816 (6)] reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention. . . . Because the plaintiff's [evidence] was insufficient to satisfy the requirement under CUIPA that the defendant's alleged unfair claim settlement practices constituted a general business practice, the plaintiff's CUTPA claim [could] not survive the failure of her CUIPA claim." Lees v. MiddlesexIns. Co., supra, 229 Conn. 850-51.
Connecticut General Statutes § 38a-815 provides that, "No person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818
to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. . . ." That section defines "person" to mean "any individual, corporation, limited liability company, association, partnership, reciprocal exchange, interinsurer, Lloyd's insurer, fraternal benefit society and any other legal entity engaged in the business of insurance, including producers and adjusters." Campania has conceded that that definition is broad enough to include Campania.
In the Complaint Elmcrest alleges: "Upon information and belief, as part of its normal business practice, Campania has engaged in the same or similar unfair claim settlement practices in violation of Connecticut General Statutes Section 38a-816 (6) with such frequency to indicate a general business practice." See Complaint, ¶ 34 (Third Count) . . . Taken in a manner most favorable to the plaintiff those allegations are sufficient to support a claim under CUTPA. Therefore, the Motion to Strike the Third Count is denied.
Campania has moved to strike the Fourth Count, which seeks a declaratory judgment, on the grounds that Campania is not an insurer. While declaratory judgment actions are often used to determine whether or CT Page 8737 not an insurer owes an obligation to an insured under an insurance policy, the law does not limit the use of declaratory judgments to that subject. Section 52-29 of the Connecticut General Statutes states in pertinent part: "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." Courts have repeatedly recognized that "[t]he purpose of a declaratory judgment action . . . is to `secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." See, e.g., Bombero v. Planning ZoningComm'n of Trumbull, 40 Conn. App. 75, 78, 669 A.2d 598 (1996) (citation omitted); See also Practice Book § 17-55.
Since the court has stricken the first two counts, the declaratory relief sought in Count Four is limited to whether or not Campania has violated CUTPA as alleged in the Third Count. The Fourth Count, therefore, seems wholly unnecessary. The plaintiff does not need a declaration of its rights if it can obtain damages under the Third Count. However, a count is not subject to being stricken merely because the court deems it to be unnecessary. Therefore, the Motion to Strike the Fourth Count is denied.
By the court,
Aurigemma, J.