## Alexander Ubysz et al. *v.* Anthony DiPietro, Administrator (Estate of Josephine DiPietro)

Bogdanski, C. J., Peters, Healey, Armentano and Shea, Js.

Argued March 10—decision released July 28, 1981

*Thomas P. Tabellione,* for the appellant (defendant).

*James M. Marinelli,* with whom, on the brief, were *James Kelly* and *Maureen Chmielecki,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The plaintiffs brought this action after the defendant administrator of the decedent's estate disallowed their proof of claim against the estate. The plaintiffs sought, in the first count of their complaint, a conveyance of the premises located at 96 Belmont Street, New Britain. In the second count, they sought the reasonable value of services rendered. Written interrogatories were submitted to the jury who found in favor of the plaintiffs on the first count of the complaint. Following the denial of his motions to set aside the verdict and for a directed verdict, the defendant has appealed from the judgment ordering him to convey the premises to the plaintiff.

The jury could reasonably have found the following facts: On March 19, 1978, the decedent, Josephine DiPietro, died intestate. The decedent's eldest daughter, Lucille Ubysz, and Lucille's husband, Alexander Ubysz, are the plaintiffs. Lucille's brother, Anthony DiPietro, who is the administrator of the decedent's estate, is the named defendant.

Before Josephine died in 1978, and before her husband Emmanuel DiPietro died in 1976, they lived in a single family home, owned by Emmanuel, at 96 Belmont Street in New Britain. Their

daughter Lucille, at the time of the trial, had lived in the house for fifty years. Since 1953, Lucille and her husband had lived in a converted apartment in the house.

The plaintiffs' converted apartment consisted of five small rooms and one bath. One of the rooms was used as a closet. Since there were no conventional heating facilities in the apartment, the plaintiffs heated their apartment solely by the kitchen stove. Lucille's parents, Josephine and Emmanuel, lived downstairs. Since there was no bath or shower on this floor, they shared the upstairs bath.

By 1959, the plaintiffs had three children. The growing needs of the family brought about their decision, in 1961, to move from the house. In February of that year, the plaintiffs informed Emmanuel that the demands of their growing family required more space and, as a result, they intended to move from the apartment. Emmanuel asked the plaintiffs to remain at the house because he said that he and his wife could not maintain the premises without the plaintiffs' aid. At that time, Emmanuel was in poor health; he suffered from glaucoma and a heart condition which made it impossible for him to drive a car and difficult for him to do many physical chores around the house. In return for the plaintiffs' assistance, Emmanuel promised the plaintiffs that the house on Belmont Street would be devised to the plaintiffs upon the death of the survivor of himself and his wife Josephine.

Shortly after she spoke with her father, Lucille discussed the matter with her mother. Josephine agreed that if the plaintiffs stayed, upon the death of the survivor of herself and her husband, the house would be devised to the plaintiffs.

The plaintiffs remained at 96 Belmont Street, paid rent, and assisted Josephine and Emmanuel not only in maintaining the premises, but also by adding improvements to the property. They also performed many everyday routine jobs, including doing much of the driving for Emmanuel. Except for three brief vacations consisting of three or four days each, the plaintiffs were continually at the premises between 1961 and 1978.

In 1976, Emmanuel died intestate. With the cooperation of the DiPietro children, Josephine became the sole owner of the property. Shortly after Emmanuel's death, Josephine developed Hodgkins disease and required a great deal of help at her home. The plaintiffs gave her the help she needed, and continued to take care of the property.

In 1978, Josephine died intestate. One of the assets of her estate was the premises located at 96 Belmont Street. At trial, Josephine's two sisters testified that Josephine intended to make out a will conveying the premises in question to the plaintiffs.

On appeal from the judgment ordering the conveyance of the property to the plaintiffs, the defendant presses a number of claims of error.

## I

Three of the defendant's claims relate to the failure of the trial court to grant his motion for a directed verdict.

## A

The defendant argues first that the trial court erred in denying his motion for a directed verdict because "there was an absence of evidence that the Defendant's decedent entered into a contract with

the Plaintiffs." The basis of this claim appears to be that since Alexander was not present at the conversation between Lucille and Josephine, there was a lack of any evidence to show that Alexander was a party to the contract with Josephine.

It is true, as the defendant points out, that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1(c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts (1957) §§ 18, 22; see also *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 444, 6 A.2d 357 (1939); *Clark* v. *Diefendorf,* 109 Conn. 507, 510, 147 A. 33 (1929); and the identities of the contracting parties must be reasonably certain. We disagree, however, with the defendant's claim that both of these elements were lacking in the present case.

The fact that Alexander was not present during the conversation between Lucille and Josephine, or that he did not formally discuss the agreement with Josephine, does not mean that he could not be found to be a party to the contract with Josephine. "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." Restatement (Second), Contracts § 21(1) (Tent. Dr. 1964); see 1 Corbin, Contracts (1963) § 18; 1 Williston, Contracts (1957) § 22A. There was sufficient evidence from which the jury could have found that Josephine indicated her assent to the agreement—as earlier discussed among the plaintiffs and Emmanuel—with both Alexander and Lucille, and that Alexander indicated his assent to the agreement with Josephine. Not only had Josephine verbally agreed to the pro-

posed agreement concerning both plaintiffs with Lucille, but her acts also manifested her intent to enter into the contract with both Lucille and Alexander. Likewise, Alexander's discussion with Lucille and Emmanuel, and his subsequent acts, manifested his intent to enter into the contract with Josephine and Emmanuel. The jury could reasonably have inferred that Josephine along with her husband, intended to enter, and did enter, into a contract with both Lucille and Alexander and that Alexander and Lucille intended to enter, and did enter, into a contract with Josephine and Emmanuel.

## B

The defendant next contends, on essentially two grounds, that the trial court erred in denying his request for a directed verdict based on the statute of nonclaim, General Statutes § 45-205. He argues first that since Alexander was not a contracting party with Josephine, Alexander's sole claim was against the estate of Emmanuel. Since we have already concluded that it was reasonable for the jury to have found that Alexander was a contracting party with Josephine, this argument needs no further discussion.

The defendant further contends that, even assuming Alexander was a party to the contract with Josephine, the plaintiffs' claim should have been filed against the estate of Emmanuel because, having died intestate, Emmanuel took no steps to insure that the house would be devised to Josephine.

General Statutes § 45-205 reads in pertinent part: "(a) The court of probate may order the citation of the creditors of the deceased whose estate is in settlement before it to bring in their

claims against such estate within such time, not more than twelve months nor less than three months, from the date of such order, as it limits . . . . (b) If any creditor fails to exhibit his claim . . . within the time limited by such order, he shall be barred of his demand against such estate . . . ."

The issue of whether the plaintiffs had, but did not file, a claim against the estate of Emmanuel is not determinative of whether they now have a legitimate claim against the estate of Josephine. The agreement between the parties was that upon the death of the survivor of either Emmanuel or Josephine, the house would be devised to the plaintiffs. At the time of Josephine's death, the house was owned by her. The plaintiffs, up to the time of her death, fully performed their part of the agreement. Josephine, as the survivor of her husband, did not devise the house to the plaintiffs. Thus, the plaintiffs properly filed a claim against her estate for the breach of contract. The fact that they did not file a claim against the estate of Emmanuel acts as no bar to their right to file a claim against Josephine's estate.[1]

## C

The defendant also sought a directed verdict on the ground that the plaintiffs failed to satisfy the requirements of the statute of frauds, General Statutes § 52-550. That statute states: "No civil action shall be maintained . . . upon any agreement for the sale of real estate or any interest in or concerning it . . . unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent."

---

[1] Because of our resolution of this issue, we find no error as claimed in the court's charge to the jury on this matter.

The court denied the motion, ruling that the acts of part performance took the case outside of the statute. On appeal, the defendant claims that the court erred because "the doctrine of part performance does not apply in a situation where a claim is being made against an estate for an oral promise to devise land."

We have held that acts on the part of the promisee may be sufficient to take a contract out of the statute "if they are such as clearly refer to some contract in relation to the matter in dispute." *Rienzo* v. *Cohen,* 112 Conn. 427, 429, 152 A. 394 (1930); see *Padula* v. *Padula,* 138 Conn. 102, 108, 82 A.2d 362 (1951). "The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud." *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 249, 137 A. 769 (1927). "[T]he acts of part performance generally 'must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties.' *Andrew* v. *Babcock,* 63 Conn. 109, 120, 26 A. 715 [1893]. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." *Rutt* v. *Roche,* 138 Conn. 605, 608, 87 A.2d 805 (1952); see *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 545, 391 A.2d 170 (1978); *Wolfe* v. *Wallingford Bank & Trust Co.,* 124 Conn. 507, 513–16, 1 A.2d 146 (1938); 3 Williston, Contracts (1960) § 533.

The defendant's contention, that the doctrine does not apply in situations involving claims against an estate for an oral promise to devise land, is without merit. In the past, we have applied the doctrine to such situations and have held that acts of part performance, if adequate under the circumstances, can take an oral contract to devise real property out of the statute. See *Padula* v. *Padula,* supra, 108; *Grant* v. *Grant,* 63 Conn. 530, 539, 29 A. 15 (1893);[2] see also Restatement (Second), Contracts § 197, illus. 10 (Tent. Dr. 1968). The court properly applied the doctrine to this case by submitting the issue of part performance to the jury.

## II

The defendant next claims that the court erred in its comments and in its charge to the jury concerning the issue of the attorney-client privilege.

During the course of the trial, the jury heard testimony relating to the intent of the defendant's decedent with regard to the disposition of her assets. During the direct examination of a witness for the plaintiffs, the defendant objected to a question asked of the witness. Outside of the presence of the jury, the defendant based his objection on the attorney-client privilege. The trial court requested that briefs be filed on the issue and recessed the trial for a few days.

After submission of the briefs, the trial court sustained the defendant's objection. Subsequently, when the jury returned to the courtroom, the court explained to the jurors that one of the reasons why the witness who was on the witness stand prior to

---

[2] We find the defendant's attempts to distinguish these cases unpersuasive.

the recess was unable to testify further was because of the attorney-client privilege.[3] The defendant took an exception to the comment, arguing that "technical reasons" should have been given as the explanation of the witness' absence.

We have held that "[t]he trial court is vested with a large discretion over matters occurring in the conduct of the trial. While this is a judicial discretion and therefore subject to some degree of review and control, its exercise will not be interfered with unless it has been clearly abused to the manifest injury of a litigant." *Connecticut Light & Power Co.* v. *Kluczinsky,* 171 Conn. 516, 521, 370 A.2d 1306 (1976), quoting *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 702, 220 A.2d 449 (1966). We cannot say that the court's comment, which sought to explain the absence of the previously called witness and to give coherence to the trial, was an abuse of the court's discretion.

A related claim of the defendant's is that the court committed error in its charge to the jury on this issue. The court charged: "You have heard testimony in the course of the trial, that just prior to her death, Mrs. DiPietro instructed her attorney to draw a will leaving the house in question to the plaintiffs. The fact that the plaintiffs did not call as a witness the lawyer who drew the Will, is not to be considered by you for the following reason:

---

[3] The court commented as follows: "Good morning, ladies and gentlemen. I'm glad to see you are all here after our long hiatus. When we suspended Wednesday evening, you may recall Attorney James Marinelli was offered here as a witness and you are not going to see him here testifying this morning and the reason of that is that I have excluded his testimony by reason of the so called attorney-client confidential relationship and also on the question of authority to make statements."

"Under our system of law, we have a doctrine called Lawyer-Client Privilege. This means that anything said by a client to her attorney cannot be repeated by the attorney even if he is subpoenaed as a witness. This is a doctrine sacred to our system of justice. Therefore, even if the plaintiffs wanted to subpoena the attorney, to whom Mrs. DiPietro allegedly contacted to prepare her Will, that attorney would have been obliged not to testify."

The defendant claims that such a charge was prejudicial. He contends: "Rather than a neutral statement concerning the issue of inferences, the trial court advised that an inference could not be drawn unfavorable to the *Plaintiffs* for not calling the attorney as a witness. Nothing at all was said to counter balance the effect of this statement and to neutralize its impact."

"We examine the charge to see if it fairly presents the case to the jury, in such way that injustice was not done under the rules of law to the legal rights of either litigant, and not with legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." *Pratt, Read & Co.* v. *New York, N.H. & H. R. Co.*, 102 Conn. 735, 741, 130 A. 102 (1925); see *Gorham* v. *Farmington Motor Inn, Inc.*, 159 Conn. 576, 582, 271 A.2d 94 (1970). Upon review of the court's instructions, we fail to find error.

### III

The defendant also argues that the trial court erred in its charge to the jury with regard to the applicable standard of proof.

In most civil actions, the plaintiff must prove his case by a fair preponderance of evidence. "[T]here is a limited range of claims and contentions which

the party is required to establish by a more exacting measure of persuasion." McCormick, Evidence (2d Ed.) § 340, p. 796; see 9 Wigmore (3d Ed.) § 2498, pp. 325–35. In Connecticut, in order to recover on a claim arising out of alleged services rendered to a decedent, the plaintiff must prove his case by "clear and satisfactory" proof. See *Graybill* v. *Plant,* 138 Conn. 397, 400, 85 A.2d 238 (1951); *Yantz* v. *Dyer,* 120 Conn. 600, 602, 181 A. 717 (1935); *Clark* v. *Diefendorf,* 109 Conn. 507, 514, 147 A. 33 (1929); *Howd* v. *MacGregor,* 102 Conn. 331, 334, 128 A. 518 (1925).

Although an examination of the charge reveals that the court, at the beginning of its instruction, used the phrase "fair preponderance of the evidence" to describe the burden of proof which must be met by the plaintiffs,[4] the court later stated that this standard is only normally applicable in civil cases. In cases such as the present one, however, the court stated: "We have to look at it from a different standpoint." It then charged: "The law takes note of the fact that the claimants are alive

---

[4] In his exceptions to the charge, the defendant's counsel objected to the language concerning fair preponderance of the evidence although he also stated that "it's true that you did clarify it, your Honor, but I do think that the preponderance of evidence should be ignored by them . . . ."

We note that the plaintiffs' brief observes the following: "The plaintiffs ask the Court to recognize that the charge given to the jury is taken almost in its entirety from the defendant's Request to Charge. While certain portions of the defendant's request were omitted, language concerning 'fair preponderance of the evidence' can be found in Part III B of the defendant's Request to Charge, as can the language used by the Court regarding, 'clear and satisfactory proof.' While the Court did not give the charge exactly as requested, the charge as given is substantially that proposed by the defendant. As such, the defendant should not now be allowed to find error in that charge." The defendant's request referred to is not in the record or briefs.

and the person against whose Estate the claim is made is deceased. And that in many instances, it is far easier for the claimants to offer proof of the claim than it is for the representatives of the Estate to offer proof against it. So, when you come to weigh the evidence in a case of this kind, you must throw into the scales against the claimants the possiblity of a greater ease of proof on their part than on the part of the Estate. So it is the law in such a case as this that the claim must be carefully scanned by you and you should find it proven only upon clear and satisfactory proof. The same rule of clear and satisfactory proof applies also if you come to consider the amount of damages the plaintiffs are entitled to recover, if you find that they have established their right to a legal recovery." Since the charge is not to be critically dissected for possible inaccuracies of statements, but rather it is to be considered as a whole as to its probable effect upon the jury in guiding them to a correct verdict; see *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933); see also *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978); *Cuneo* v. *Connecticut Co.,* 124 Conn. 647, 653, 2 A.2d 220 (1938); we find no error.

## IV

The defendant further attacks the jury charge on the ground that the court's instruction concerning the doctrine of part performance was not "accurate in law, adapted to the issues, and adequate to guide the jury in rendering a correct verdict."[5] *Berniere* v. *Kripps,* 157 Conn. 356, 358, 254 A.2d

---

[5] The defendant also claims error on the part of the trial court in instructing the jury on the doctrine of part performance since the "issue was not properly before it." As previously discussed in this opinion, we disagree.

496 (1969); see *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277 (1973). He premises his claim on the lack of instructions on "[m]any of the elements of the doctrine" as set forth in various opinions of this court.

We have held that "[i]nstructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." *Tomczuk* v. *Alvarez,* 184 Conn. 182, 190, 439 A.2d 935 (1981); *Duley* v. *Plourde,* 170 Conn. 482, 489, 365 A.2d 1148 (1976). "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." *Goggins* v. *Reinzo Trucking Co.,* 166 Conn. 240, 249, 348 A.2d 569 (1974), quoting *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20, 118 A.2d 798 (1955). Since the charge in this case was "sufficiently correct in law, adapted to the issues and ample for the guidance of the jury"; id.; we find no error.

V

The defendant also argues that the trial court erred in its charge to the jury on the issue of mutual manifestation of assent and its refusal to charge as requested. It is the defendant's contention that "by refusing to charge the jury as requested, and by charging the jury as it did, the law was incorrectly represented to be that all parties did not have to assent to, nor be aware of, the contract in issue."

Upon review of the charge, we find that it was sufficiently correct in law, adapted to the issue, and

ample for the jury's guidance. See *Messina* v. *Iannucci,* supra; *Michaud* v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326 (1967). Thus, we find no error.

## VI

The defendant next argues that the trial court erred in the form of the verdict and/or interrogatories submitted to the jury.[6] He specifically contends that because all references to the plaintiffs were in the plural form, the interrogatories were "inaccurate, ambiguous, and inconclusive."

The submission of interrogatories to the jury ordinarily rests within the trial court's discretion. *Gaulton* v. *Reno Paint & Wallpaper Co.,* 177 Conn. 121, 125, 412 A.2d 311 (1979); *Sheeler* v. *Waterbury,* 138 Conn. 111, 114, 82 A.2d 359 (1951); *O'Donnell* v. *Groton,* 108 Conn. 622, 627, 144 A. 468 (1929). "This rule is subject to the exception that where the complaint contains two or more counts, or when two or more causes of action are incorporated in one count, the defendant has the right to save him-

---

[6] After evidence was taken, written interrogatories were submitted to the jury on the first count of the complaint, which sought a conveyance of the premises. The court charged the jury that if they answered "yes" to all three of the questions posed in the interrogatories, their deliberations may stop, and judgment would enter accordingly on the first count. The court then instructed that if they did not answer "yes" to all three questions, then they must consider the second count, which sought the reasonable value of services.

The interrogatories posed the following three questions respectively: "1. As to the First Count of the Complaint, did you find that there was an agreement between the plaintiffs and Mr. and Mrs. DiPietro in which the plaintiffs were to render services to Mr. and Mrs. DiPietro and take care of them during their lifetime, and in return, Mr. and Mrs. DiPietro agreed that after the death of the last of them, they would leave the property at 96 Belmont Street, New Britain, to the plaintiffs by will?

"2. Was there sufficient partial performance to make the agreement enforceable even though it was an oral agreement?

"3. Did the plaintiffs comply with their part of the agreement?"

self from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories. *Callahan* v. *Jursek,* 100 Conn. 490, 493, 124 A. 31 [1924]." *Sheeler* v. *Waterbury,* supra, 114–15; see *Gaulton* v. *Reno Paint & Wallpaper Co.,* supra, 126.

The purpose of interrogatories is to elicit "a determination of material facts, [and] to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent." *Gaulton* v. *Reno Paint & Wallpaper Co.,* supra, 125, quoting *Freedman* v. *New York, N.H. & H. R. Co.,* 81 Conn. 601, 612, 71 A. 901 (1909). "[T]he proper function of interrogatories is to provide a means by which the jury may record the findings of fact which form the basis for their verdict." *Gaulton* v. *Reno Paint & Wallpaper Co.,* supra, 127.

We do not agree with the defendant's contention that the interrogatories submitted were inaccurate, ambiguous, or inconclusive. Since the complaint was in two counts, the court submitted interrogatories to the jury. The complaint filed by the plaintiffs alleged that the "plaintiffs," and not "either or both" of them, entered into an agreement with the decedent. Thus, the plaintiffs were proceeding solely under the theory that *both* of them had entered into a contract. The complaint was not separated as to each plaintiff. We conclude that the interrogatories submitted to the jury adequately covered the issues sought to be presented to them, and were not inaccurate, ambiguous or inconclusive.[7]

---

[7] Because of our disposition of this issue, we find no error in the related jury charge.

## VII

The defendant finally claims error in the court's denial of his post-verdict motions.[8] Since these motions were premised on claims of error previously discussed in this opinion, we find no error in the court's denial of these motions.

There is no error.

In this opinion the other judges concurred.

---

[8] The defendant filed motions pursuant to Practice Book §§ 254 and 255 (now §§ 320 and 321) which the trial court denied in a written memorandum of decision.