[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the plaintiffs, Robert Cook and Merrill Cook, (hereinafter "R. Cook" and "M. Cook") against the defendants, Allstate Insurance Company (hereinafter "Allstate") and its agent, Robert Waldo, (hereinafter "Waldo") in two counts, negligence and breach of a fiduciary relationship. The plaintiffs have alleged that as a result of the aforementioned negligence and breach of fiduciary relationship, there was no fire insurance covering premises at 219 Separatist Road, Storrs, Connecticut when said premises were struck by fire on March 14, 1992. Plaintiffs have further alleged that the defendants should have insured, at least by binder, said premises prior to the CT Page 7557 expiration of the existing Royal Insurance Company policy which expired on March 10, 1992, and/or failing to provide insurance coverage as alleged, the defendants should have advised the plaintiffs that their existing insurance was to expire on March 10, 1992 and that they should seek coverage elsewhere to take effect upon the expiration of the Royal Insurance policy. Defendants have denied these allegations and by way of special defense, inter-alia, have alleged that the plaintiffs were guilty of contributory negligence and that they had no insurable interest in the subject premises.
Much of this decision is based upon the credibility of the parties. On this issue the court finds the credibility of Waldo to be superior to that of the plaintiffs. This is based upon the court observing their demeanor on the witness stand, the manner in which they answered questions, the content of their answers, their memory or lack thereof and the clarity of their answers or lack thereof. The court has no reason to doubt the integrity of any of the witnesses.[1] However, the plaintiff, M. Cook, was unable to recall pertinent facts, and her testimony was often contradictory.[2] R. Cook's testimony was insufficient to support his claims. The court believes that each party believed what they said, but intent alone is not sufficient to establish necessary facts.
Accordingly, based upon the totality of the evidence, the court finds as follows:
M. Cook first contacted Waldo on or about September 5, 1991 at the Allstate office located at the Buckland Hills Mall in Manchester, Connecticut to obtain automobile insurance to replace insurance that was being terminated. She obtained such insurance from Waldo after completing an application for same. Waldo brought up the subject of homeowners insurance and gave M. Cook an "apples to apples" quote based upon her existing policy with Royal Insurance Company. He advised her that to obtain an exact quote, he would need information as to the age and square footage of the house as well as the history of any prior insurance claims regarding the subject premises. M. Cook advised that she was not interested in homeowners insurance at that time. They met again in October, 1991 to add another automobile to the existing Allstate policy, but homeowners insurance was not discussed at that time. The next time they met was in January, 1992 following M. Cook's receipt of a non-renewal notice of her Royal Insurance Company, (hereinafter "Royal") homeowners policy. At this meeting CT Page 7558 she brought up the subject of homeowners insurance and again Waldo asked her to provide specific information before he could give her an exact quote. M. Cook next approached Waldo at his office on March 4, 1992 and presented him with the declarations page of the Royal policy. Waldo was with another customer and could not have a meeting with M. Cook although he said he would call her within 24 hours. She left and took the declarations page with her. The next day, March 5, 1992, Waldo called M. Cook and left a message on her answering machine requesting information regarding the house and requesting that she call him back. She did not call him back either to give him the requested information or tell him she couldn't get all the information because her husband, R. Cook, was away. M. Cook testified that she thought she had a thirty (30) day grace period following the expiration of the Royal insurance policy on March 10, 1992. She further testified that on March 5, 1992, she knew she did not have homeowners insurance with Allstate and knew that Waldo couldn't write homeowners insurance for her without her furnishing the information he requested. Further, R. Cook testified that when he heard the message on the answering machine, he knew Allstate had not written insurance for them.
 Was Waldo an agent of the plaintiffs and did he owe a duty to the plaintiffs?
The court is satisfied, based upon the totality of the evidence, that Waldo was a "captive" agent of Allstate who wrote policies only for Allstate as opposed to an independent agent who writes policies for several companies. The court finds that Waldo was solely the agent of Allstate and was never the agent of the plaintiffs. He owed a duty only to Allstate. See testimony of defendants' expert, Charles Watson. Further, there is no evidence that either plaintiff ever requested Waldo to be their agent for homeowners insurance, that they ever asked him to provide them with homeowners insurance or that they did anything other than seek a quote for the price of homeowners insurance. There was never any conduct by Waldo which would reasonably allow the plaintiffs to conclude that Waldo was their agent. As noted by Mr. Watson, the fact that Waldo had written automobile insurance for the plaintiffs did not make him their agent for any other insurance. In short, there was neither an express nor implied agreement between the plaintiffs and Waldo to be their agent or to provide homeowners insurance for them. Even if the plaintiffs thought that there was such an agreement, there was no basis for Waldo to believe one existed, and it is clear that he did not. CT Page 7559 There was no meeting of the minds between Waldo and the plaintiffs or either of them. There was no offer that Waldo be their agent or provide homeowners insurance, and there was no acceptance of same. Accordingly, Waldo owed no duty to either or both of the plaintiffs in this regard, and, therefore, their claim of negligence must fail. There can be no breach of a duty if a duty does not in fact exist.
Additionally, as stated by Mr. Watson, there is no duty to the public as claimed by Mr. Morgan, plaintiffs' expert, to advise members of the public such as potential customers like the plaintiffs that their existing policy will expire or that they will be without coverage if they take no action. It is laudable of Mr. Morgan to believe that he should give such advice, but his belief and intention does not rise to a duty to the public, and in this case to the plaintiffs. Mr. Morgan's standard of duty or care is higher than that which is legally required. See testimony of Charles Watson.[3]
 Did Waldo breach the standard of care?
Assuming, arguendo, that there was a duty owed to the plaintiffs by Waldo, under the circumstances of this case Waldo did not breach any standard of care. As testified by Mr. Watson, Waldo's telephone call to the Cook residence to again request the required information was sufficient. Both Mr. Morgan and Mr. Watson testified that it was reasonable for Waldo, on March 4, 5, 1992 to assume M. Cook was merely shopping for comparative quotes or rates. Mr. Watson stated, and the court agrees, that M. Cook's lack of response to the telephone call on March 5, 1992 indicated that the plaintiffs had chosen not to insure the property with Allstate. Further, the court agrees with Mr. Watson that Waldo had no obligation to inquire of M. Cook whether she wanted him to obtain a policy for her, had no obligation to tell her of the expiration date of the Royal policy, and had no obligation to tell her the urgency of getting other insurance. Both Mr. Morgan and Mr. Watson agreed that her agency for the Royal policy, the Lobo Agency, had an obligation to advise plaintiffs of the March 10, 1992 expiration date and to advise as to what other insurance was available. Mr. Morgan and Mr. Watson agreed that it was not reasonable for Waldo to anticipate M. Cook's belief of a thirty day grace period. The court, therefore, concludes that Waldo did not breach any standard of care under the circumstance of this case. Plaintiffs' reliance on Dimeo v. Burns, 6 Conn. App. 241
(1986) is misplaced. That was a case in which the insurance agent CT Page 7560 failed to advise his client of the need for sufficient uninsured motorist coverage. However, that was a case in which the agent had already agreed to and did provide coverage. There was an agency relationship. In the case at bar the plaintiffs never became a client of Waldo nor did he become their agent.
Was M. Cook contributorily negligent?
The short answer to that question is yes. Both Mr. Morgan and Mr. Watson testified that it was her responsibility to timely provide the information requested by Waldo. Her failure to do so was negligence on her part, particularly her failure to respond to Waldo's request to call her back. She knew that the Royal policy was expiring and did not take sufficient action to keep the property insured. Even if she thought there was a 30 day grace period on the Royal policy, she had no reasonable basis for that belief and that does not excuse or offset her own negligence. Her contributory negligence, higher than any possible negligence of Waldo, alone bars plaintiffs' recovery.
 Was there a fiduciary relationship between Waldo and the plaintiffs?
For the same reasons the court has found that no duty was owed to the plaintiffs by Waldo, the court finds no fiduciary relationship or duty from Waldo to the plaintiffs. There was no evidence that the plaintiffs relied on Waldo and no evidence that he had any indication that they were relying upon him. There was no agreement, express or implied, between them, and there was no meeting of the minds. Based upon the totality of the evidence, the "unique degree of trust" required of a fiduciary relationship has not been established.
 Did the plaintiffs have an insurable interest in the building(s) and land?
In order to have an insurable interest, the plaintiffs must show either legal or equitable ownership of the subject premises. It is clear that on March 14, 1992, the day of the fire, and prior thereto, they did not have legal ownership. R. Cook testified that there was an agreement in 1980 with his father and of which his brother, William Cook, was aware that R. Cook would pay his father $40,000 for the subject premises, which as it turned out was worth over $200,000 in 1991. If his father died, which he did in 1984, R. Cook was to pay any balance due to his CT Page 7561 siblings. However, prior to his father's death, his father transferred the property to R. Cook's brother, William, so William could obtain a mortgage that would furnish him with the money he needed to buy property out of state. R. Cook had no written agreement with his father, his said brother or any of his siblings. Defendants claim that, therefore, any agreement was invalid under the Statute of Frauds. Plaintiffs counter that part performance by R. Cook (payment of the purchase price) was sufficient to take the agreement out of the Statute of Frauds, and, thereby, make it an enforceable agreement resulting in R. Cook having an equitable and, therefore, insurable ownership of the property.
"It is generally held that partial or even full payment of the purchase price for the sale of land under an oral contract does not take the case out of the statute of frauds". Breen v.Phelps, 186 Conn. 86, 94 (1982). However, "The acts also must be of such a character that they can be naturally and reasonable accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ."Ubysz v. DiPietro, 185 Conn. 47, 53 (1981). The evidence showed that the plaintiffs were tenants of the subject property and even had acquired tenants' insurance. The only documentary evidence offered by plaintiffs to support their claim was a series of canceled checks many of which had no notation as to purpose. They were in differing amounts, and their purpose was ambiguous. They were just as likely to have been rent payments as payment on the alleged purchase price. R. Cook did say that he had made improvements to the property but was neither sufficiently specific as to what improvements he made nor did he present any documentary evidence to support his claim. Some, if not most, of his testimony could have been supported by testimony of his aforementioned brother, William Cook. However, plaintiffs failed to produce him at trial or by deposition. Under the rule ofSecondino v. New Haven Gas Company, 147 Conn. 672, (1960) the court draws the inference that William Cook's testimony would have been unfavorable to the plaintiffs' claim. Plaintiff, R. Cook, testified that William Cook lived in Stamford, Connecticut. He was, therefore, subject to subpoena for the trial and/or a deposition, and there was no evidence presented at trial that any effort had been made to have him testify despite the fact that there was a nine day recess in the trial after there was testimony of the plaintiffs that they did not have legal title to the property. William Cook was a witness who by his relationship to the plaintiffs and the issue of ownership could reasonably CT Page 7562 have been expected to have evidence or testimony material to and favorable to the plaintiffs' claim. He would naturally have been produced by the plaintiffs. Therefore, the two requirements for application of the Secondino rule have been met. The court notes the testimony of R. Cook that the property was in fact transferred by William Cook to the plaintiff, R. Cook, in late 1992 or 1993, but deems that insufficient to prove the plaintiffs' claim. In sum, the court finds that the plaintiffs failed to prove by a fair preponderance of the evidence that R. Cook had an equitable ownership of the subject property in March of 1992 and, therefore, the court finds that the plaintiffs did not have an insurable interest in the subject premises at the times pertinent to this case.
It is also important to note that as a result of a lack of insurable interest, Waldo's job would have been more difficult. If the Cooks had either verbally or in writing applied for the insurance in their own name as the owners, would any policy issued on such an application be enforceable, and if the plaintiffs had disclosed that William Cook was the legal owner of the premises, Waldo probably would had to have delayed binding coverage or approving the application until either William Cook's signature could have been obtained or a Power of Attorney making either of the plaintiffs his agent could have been produced.
For all of the above reasons, or any of them, the court finds that the plaintiffs have not sustained their burden of proof (by a fair preponderance of the evidence) on their complaint, and that the defendants have sustained their burden of proof on their First and Second Special Defenses of contributory negligence and their Fifth Special Defense of lack of insurable interest in the property.
Accordingly, judgment is hereby entered in favor of the defendants.
Rittenband, J.