[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ACCEPTANCE OF REPORT OF ATTORNEY TRIAL REFEREE (DATED SEPTEMBER 17, 2001), OBJECTION TO ACCEPTANCE OF SAME (DOCKET ENTRY NO. 127), AND JUDGMENT ON REPORT (DOCKET ENTRIES 125.01 AND 126.01)
The facts are as stated in the report of September 17, 2001, of Attorney Trial Referee Trembicki (ATR). They shall here be repeated only as necessary to support this court's ruling.
With regard to the court's function vis-a-vis the acceptance or rejection of an attorney trial referee's report, the court is not bound to accept conclusions of law reached by the ATR but is obligated to determine whether the ATR's findings of facts are supported by the evidence and, if so, whether those findings permit recovery. "[T]he trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee."Dills v. Enfield, 210 Conn. 705, 713 (1989). "The nondelegable judicial duty to render judgments is not limited to endorsement of the decision recommended by the referee." Id.
The ATR found against the plaintiff on all counts with the exception of Count Six (Unjust Enrichment). The recommendation was that the court enter judgment for the plaintiff only on that count and in the amount of $7,500 plus prejudgment interest. At argument before this court on Friday, December 14, 2001, counsel for the plaintiff argued all sums it paid — a total of $42,500 — plus interest should be awarded the plaintiff.
The court is not persuaded. The initial payment of $7,500 was made in contemplation of an agreement which was never consummated. It was forwarded with a letter (Plaintiff's Exhibit F) that made clear the money was paid as a "deposit" toward the ultimate purchase price of the tax lien in question. For the plaintiff not to be refunded this amount when the anticipated purchase did not occur would be to unjustly enrich the defendant for all of the reasons stated in the ATR's Findings of Facts CT Page 17097 (Numbers 1 through 40 of the referenced report).
The plaintiff paid the defendant the additional amount of $15,000 on or about April 24, 1998. Plaintiff's Exhibit P clearly states that two checks (in the total of $15,000) were sent with the understanding that, if the checks were accepted and negotiated, the defendant would "move to extend the existing law dates in your pending foreclosure action . . . to dates sufficient to provide us until May 18, 1998, at 9:00 a.m., to determine finally and conclusively whether we will be acquiring your tax liens." Clearly, no final agreement to purchase had been made as of April 24, 1998. Exhibit P continued, "[I]f we fail to close upon the purchase of the tax liens on or before May 18, 1998, we will have no further right to the $15,000 delivered with this letter." The plaintiff failed to close on the referenced purchase and, by the terms of its own letter, its right to a return of that money was extinguished. Unlike the $7,500 deposit on February 27, 1998, the acceptance of the checks sent on April 24, 1998, imposed upon the defendant the obligation to extend the law date. The defendant in fact had the law day extended. It acted in reliance upon the plaintiff's representation it would not seek return of the $15,000 if, as the parties then hoped, the plaintiff purchased the tax liens. The plaintiff benefitted from that extension of the law date. The defendant was not unjustly enriched by this plaintiff's payment of that money, having done what it (the defendant) had agreed to do to enable the plaintiff to "determine finally and conclusively" (Exhibit P) its interest in purchasing the defendant's tax liens.
On May 15, 1998, the plaintiff sent the defendant a check for $20,000 with an accompanying letter that read, "This will confirm that you will move the existing law dates in your foreclosure action . . . to dates sufficient to provide my client until May 26, 1998, at 5:00 p.m. to acquire your client's tax liens." See Plaintiff's Exhibit Q. In view of the payment conditioned upon the defendant's extending of the law date still another time, the plaintiff's characterization of all monies paid (by then, a total of $42,500) as "deposits" is of no moment. The defendant did again accomplish the extension of the law date, the purpose of which served the plaintiff. The defendant discharged its obligation and, having done what it agreed to do, it cannot be said the defendant was unjustly enriched by acceptance and retention of that sum. Further, a clear reading of the May 15, 1998, communication from the plaintiff is that the sum was to be considered as a "deposit" if the plaintiff acted to acquire the liens[1] — which it did not. Neither this sum — nor the prior paid sum of $15,000 — gives rise to a finding of part performance under these circumstances — not the least of which is the absence of an enforceable agreement.
The plaintiff has no contractual remedies vis-a-vis the parties' oral CT Page 17098 agreement. The subject of that agreement is the purchase of tax liens on certain real property. Because the parties never memorialized their "agreement," it is violative of Connecticut General Statute § 52-550, the Statute of Frauds. The plaintiff seeks to avoid the requirements of the statute by relying on the doctrine of part performance. That reliance is misplaced since the acts of the party who seeks to enforce the agreement (here, the plaintiff) must be of such character that can be naturally and reasonable accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute."Ubysz v. DiPietro, 185 Conn. 47, 54 (1981) (citations omitted). Since the payments of $15,000 and $20,000 were in fact to procure the extension of law dates to buy for the plaintiff the time it required to determine the extent of its interest in purchasing the tax liens, the payment of such sums do not constitute part performance. Nor does the plaintiff's "drafting" of documents or its exercise of due diligence or the exchange of correspondence establish the same. No physical possession of the property was ever given the plaintiff. The acts done by the plaintiff were of a preliminary character done in anticipation of an actual contract which never evolved. See, e.g., Santoro v. Mack, 108 Conn. 683, 692
(1929).
The factual findings of the ATR support the conclusion no enforceable contract existed for the above stated reason as well as for the reason the agreement was too indefinite to bind the parties.[2] "If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . [S]o long as any essential matters are left open for further consideration, the contract is not complete. Geary v. WentworthLaboratories, Inc., 60 Conn. App. 622, 627 (2000) (citations omitted). Absent an enforceable contract, the plaintiff could not recover on Counts I, II, or III — counts sounding in specific performance, breach of contract, and breach of the implied covenant of good faith and fair dealing. Nor do the facts warrant a finding the plaintiff is entitled to recover for the defendant's alleged negligent misrepresentation regarding either the need for the consent or the actual consent of the city. For all of the reasons stated in ATR Trembicki's report, the factual findings pertinent to Count IV support a finding the plaintiff is not entitled to recover on that count. The evidence does not support a finding the defendant made any misrepresentations regarding the required consent and thus it follows no detrimental reliance was proven. In point of fact, the plaintiff has accused the city of making the same alleged misrepresentations it here levels at the defendant. See, e.g., Plaintiff's Exhibit X.
Count Five alleges a cause of action under the Connecticut Unfair Trade Practices Act (CUTPA). In the absence of an enforceable agreement, no CT Page 17099 such claim may be maintained. The evidence does not support a finding of bad faith by the defendant. To the contrary, it establishes the plaintiff knew of the need for the city's consent and believed such consent would be given in view of the plaintiff's (specifically, D'Addario's) good relationship with Mayor Ganim. Assuming arguendo the parties had agreed it was the defendant's obligation to procure the city's consent and had misrepresented the city's consent, the plaintiff did not establish it relied on such misrepresentation or that such reliance resulted in a pecuniary loss.
Judgment enters for the defendant on Counts I, II, III, IV, and V. Judgment enters for the plaintiff on Count VI in the amount of $7,500 plus ten percent interest per year to the date of this judgment.
B.J. SHEEDY, JUDGE